THOS. J. SEEHORN, Administrator, etc., Respondent, v. SUPREME COUNCIL CATHOLIC KNIGHTS OF AMERICA, Appellant.

Kansas City Court of Appeals, June 2, 1902.

1. **Benefit Societies:** SUSPENSION: ACTION OF BRANCH: PRESIDENT. A by-law of the defendant society provided that a non-paying member should be suspended from his branch by the acting president, and any branch allowing such delinquent to remain unsuspended should pay his assessment out of its general fund. The branch suspended deceased because he had been carried long enough by it and made a record thereof. At the same time, the acting president by oral declaration declared him suspended for non-payment of two certain assessments. *Held*, the action of the branch did not suspend him since it had no such power for the cause assigned. *Held*, further, that the oral action of the acting president was insufficient to effect a suspension.

2. ———: ———: NOTICE: RECORD. The suspension of a member of a benefit society is in its nature judicial, and when the society secures jurisdiction its action is prima facie legal, but the member is entitled to notice and a chance to defend, since it deprives him of his privileges and his property rights; and the suspending officer should make some record of his action.

3. ———: ———: BY-LAWS: NOTICE: WAIVER: CUSTOM. A member of a benefit society has a right to look to the conduct of the business in collection of assessments, and particularly so as that conduct affects himself; and if such conduct induces him to fall into the habit of delay in his payments, the society can not suspend him without warning.

Appeal from Jackson Circuit Court.—*Hon. James E. Gibson*, Judge.

AFFIRMED.

*Needham C. Collier* and *Chaney & Harrison* for appellant.

(1) Plaintiff's instruction 10, given by the court, was error, because the only testimony in the case as to the $15.25 showed that assessments 650 and 651 and six month's dues, for which deceased was suspendible, formed a part thereof; and for the further reason that it absolutely ignores the provision contained in the application for membership that an omission or neglect to pay assessments, fines or dues on or before the day when the same should become due would render the certificate void. Borgraefe v. Knights of Honor, 22 Mo. App. 127. (2) The court erred in refusing to instruct for defendant, because the assessment for which he was suspended was a periodical assessment of fixed amount upon deceased as provided by the constitution and by-laws (sec. 34). Life Ass'n v. Hamlin, 139 U. S. 297. (3) The court erred in refusing defendant's instructions as to liability to suspension incurred by deceased for non-payment of branch dues. Heffernan v. Supreme Council, 40 Mo.

App. 605. (4) Under the evidence in this case the court should have directed a verdict for defendant. Reichenbach v. Ellerbe, 115 Mo. 589.

*John L. Wheeler* for respondent.

(1) No by-laws of the order gave the branch authority to suspend a member on any ground; the president only had authority to suspend a member for non-payment of assessments; he did not have authority to suspend a member for money due the branch. Suspension must be for causes and by method prescribed in the by-laws. The court did not err in giving instruction No. 10. Forse v. Knights of Honor, 41 Mo. App. 116; Wanek v. Sup. Lodge, 84 Mo. App. 189; Grand Lodge v. Ross, 89 Mo. App. 621. (2) The evidence was sufficient to have submitted the cause to the jury on the question of waiver. The provision of the by-laws made Branch 562 an agent of appellant in collecting assessments from the members. McMahon v. Maccabees, 151 Mo. 522; Bacon on Benefit Societies, pp. 236, 239; Harvey v. A. O. U. W., 50 Mo. App. 477.

BROADDUS, J.—The plaintiff, as administrator of the estate of Tim Brosnahan, deceased, brought this action upon a certificate of insurance issued to said Brosnahan on the twenty-sixth day of April, 1882. The agreement was to pay to any beneficiary thereafter designated by the insured, or to his legal estate on proof of his death, he being in good standing in the order, the sum of two thousand dollars. There is a proviso, however, that the assessment per capita, according to the law of the order, shall be the amount that the beneficiaries therein shall be entitled to, if such membership shall be less than two thousand, which sum shall be in full of any and all claims against said supreme council for any cause whatever. By the

terms of said certificate, the deceased agreed "to pay all assessments, dues and fines assessed against him according to the laws, rules and regulations of said order, which may now or hereafter govern the order." In the application of the deceased for membership in the defendant order, he agreed "to faithfully carry out the principles as set forth in the constitution" of said order and "subordinate constitution and by-laws," that then, "or may hereafter govern said order, as well as the branch," and that upon failure to do so, he agreed to forfeit all rights to membership and benefits.

Said Brosnahan died on the fifth day of April, 1899. Due proof of loss was made. The defendant seeks to avoid payment on the ground that the deceased stood suspended at the date of his death. He belonged to what was denominated Branch 562 of the order, and it is alleged that he was suspended on the twenty-seventh day of March, 1899, for non-payment of dues, and that said suspension was made by said Branch 562 and the acting president thereof for the non-payment of two assessments designated as numbers 650 and 651, each for the sum of eighty cents.

Under the by-laws of the order, "any member who is in arrears for dues to the branch for six months or for supreme or state tax for sixty days, or when he fails to pay his assessments for which he is liable . . . he shall be suspended." It was not disputed but what the insured, at the date of his death, was in default for said assessments numbered 650 and 651, and that on the said twenty-seventh day of March, 1899, the branch of which deceased was a member undertook to suspend him, but plaintiff denies that said suspension was lawful, in that the said branch failed to comply with defendant's by-law regulating the suspension of members for non-payment of dues. Said by-law provides that any member who shall fail to pay such assessment, as aforesaid, shall be sus-

pended from the branch by the acting president, and any branch allowing such delinquent to remain without suspending him, shall pay out of its general fund all assessments due from such member while he is permitted to remain in good standing. At a meeting of the branch in question, held at Kansas City, Missouri, March 27, 1899, the minutes of the proceedings show the following action: "State per capita tax, it was shown by financial secretary's books that brother Timothy Brosnahan had been carried by this branch as a delinquent to amount of $15.25; moved and seconded that he be suspended. Carried."

The defendant on the trial was permitted, against the objection of the plaintiff to prove that the acting president, after said motion was carried, declared that the deceased was suspended on the two assessments mentioned. No record, however, was made of such action of the president. So far as the action of the branch was concerned, it was of no effect, for it had no power to suspend a member for any cause except for non-payment of dues, and it is conceded that the motion for his suspension, by its terms, did not include dues. But there was much evidence introduced by defendant to show, from defendant's account with the order, that it must have included such dues. However that may be, it was immaterial, as will be shown hereafter.

It is a question whether the mere declaration of the president of a branch of the order that a member stands suspended, without any entry on the minutes of the branch to that effect, is valid, and whether it was within the power of either the branch, the acting president, or of both combined, to suspend a member without notice to him and granting him the right to be heard. The act of suspension is one of great importance to the member, for it has the effect not only of depriving him, as such, of the fraternal benefits of the order, but it operates as a forfeiture of his certificate

of insurance. The power of suspension lodged in the branch, or its acting president, is, in its nature, judicial, and its judgments, if all the prerequisites to obtain jurisdiction of the member and the matter involved have been met, are to be taken at least as prima facie legal, and would be so recognized by the courts. Hall v. Supreme Lodge, 24 Fed. Rep. 450. It is the fundamental law of the land, that before a citizen can be affected either in his personal or property rights, he is entitled to notice of the proceedings against him or his property and the opportunity afforded him of being heard in defense of such rights.

We hold that before the deceased could have been suspended for non-payment of dues, he was entitled to notice and the right to be heard. He might have been able to have shown that the assessments had been paid but credit had not been given, or, that as his branch had been carrying him, he was relying upon it to do so as to the two assessments in question; either of which would have been a good defense and prevented a forfeiture. Puhr v. Grand Lodge, 77 Mo. App. 47. "A forfeiture conditioned to take effect upon suspension of a member of a fraternal beneficial association, does not attach until the member is actually and legally suspended. Such a defense is *strictissimi juris* not favored by the law, and can only be invoked when every step necessary to create it has been taken with technical accuracy and completeness." Lewis v. Benefit Ass'n, 77 Mo. App. 586.

It is true the by-laws of the defendant, in evidence, do not provide for notice to a member of the intended suspension, but the law steps in and supplies the omission, and requires of the association the duty of notifying such member of the time when and the place where the action is to be taken, so that he may show cause if he has any, why his privileges and his property rights shall not be forfeited. And further, in a proceeding of so much importance, the action of the presi-

dent should be evidenced by some act other than the
mere declaration of the president of the branch, that
a member has been suspended. It being, as has been
said, in the nature of a judicial act, it should be made
a matter of record in the proceedings. From what
has been said, it therefore follows that the act of sus-
pension, whether it is to be attributed to the branch
or to the president of the branch or to both, was in-
valid because of want of notice to the deceased. Mc-
Mahon v. Maccabees, 151 Mo. 522.

The defendant contends that under the pleadings
and the evidence the court committed error in not giv-
ing its instruction number one, that the verdict of the
jury should be for defendant. This contention is
founded on a condition in the application of the de-
ceased for insurance that, ''if there shall be any omis-
sion or neglect to pay any assessments, fines or dues,
on or before the days on which the said assessments
shall fall due, that then . . . the certificate of
membership which may be issued hereon, shall be void,
and all moneys which may have been paid on account
of such certificate of membership shall be forfeited.''
etc.     This question was raised in Lewis v. Benefit
Ass'n, supra, and Judge BOND, who delivered the opin-
ion of the court, said: ''It is, however, argued with
force and ingenuity that the last clause of the certifi-
cate, supra, in express terms provides for its invalidity
in three contingencies. The one insisted upon by ap-
pellant being, that it ceases to be valid 'when the
holder ceases to fulfill the requirements of the subordi-
nate council of which he is a member.' It is urged
that this is a self-executing condition upon which the
right to the fund mentioned in the certificate turned,
and that it happened in this case because the member
was in arrears for dues to his subordinate council,
contrary to its laws, for more than thirteen weeks.
This law of the subordinate council, as to the effect
of non-payment of its dues for thirteen weeks on the

part of its members, was intended to govern its relations with its members, and the penalty of suspension might have been imposed for non-compliance with its terms; or it might have been waived. In this record there is positive evidence of such waiver in the notice mailed on the day of the death of the member requiring him to pay the dues then in arrears.''

In this case it is conceded that it had been the custom of the branch in question to waive payment for the dues by deceased. The amount then due is indisputable evidence that such was the case. There seems to have been a tacit agreement between the deceased and said branch that it would advance his payments for him to the supreme council. In fact, under the defendant's by-laws, any branch allowing delinquent members to remain without suspension, was required to pay such assessments out of its general funds. In McMahon v. Maccabees, it was held that, ''a member of an assessment insurance company has the right to look to the general conduct of the business of the company in reference to the collection of its assessments according to its prescribed rules, and particularly as that conduct affects himself. And if the company, by its conduct, has induced him to fall into the habit of delaying the payment beyond the time which the company's law calls the day of suspension, it can not, without warning to him of a change in its business conduct, inflict the penalty of suspension on him.''

We hold, therefore, that the deceased was not suspended ipso facto by the terms of the contract, and that he could not have been suspended without notice.

Under the law applicable to the pleading and the facts, the finding and judgment being for the right party, it should be affirmed notwithstanding any alleged errors in the giving and refusing instructions. The cause is affirmed. All concur.